**S–C INDUSTRIES, a division of Sanford-Crowell, Inc., Plaintiff-Appellee,**

v.

**AMERICAN HYDROPONICS SYSTEM, INC., Defendant-Appellant.**

**No. 72–1810**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1972.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

Jim K. Choate, Grapevine, Tex., for defendant-appellant.

A. B. Conant, Jr., Dallas, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

PER CURIAM:

In 1966 S-C Industries (S-C) became a dealer for American Hydroponics Systems, Inc. (American), a manufacturer of hydroponic[1] equipment and chemicals. Under its dealer agreement, S-C was required to construct a greenhouse structure to house the hydroponic equipment manufactured by American and to conduct a hydroponic growing operation therein. In July of 1967 S-C purchased the greenhouse components from American and secured a local contractor to assist S-C in the erection of the greenhouse and the installation of the hydroponic equipment. American's purchase order form for the greenhouse components, which was signed by S-C, contained the following language:

> The equipment is not ordered on trial. The property described herein is sold without warranty express or implied except the printed warranty accompanying the goods on delivery.

The greenhouse materials were accompanied by a printed special warranty form which is set out in full in the margin.[2]

1. Hydroponics is the science of growing plants in chemicals and water without the use of soil.

2. SPECIAL WARRANTY
Warranty: Pan American Hydroponics, Inc., warrants to the original purchaser

The greenhouse was used to grow tomatoes until the spring of 1969 when the venture was terminated. In December 1969, the building partially collapsed. S-C brought this diversity action in 1971, claiming that American was responsible for the damage to the structure. American appeals from a judgment in favor of S-C.

█ It is undisputed that American gave a set of plans and specifications for the greenhouse to S-C several months before the greenhouse was purchased. Those plans contain a specification for the steel truss shown thereon which states, "42' Rigid Steel Frame all bolt connections—20 PSF Snowload, 16 PSF Windload." The trial court found that the term snowload designated the vertical load capacity and did not refer uniquely to weighting caused by snow. American, while admitting that the plans were given to S-C, argues that this writing did not constitute a warranty but merely a specification. Technical specifications may constitute a warranty,[3] however, even to the extent of displacing the warranties created by

this merchandise to be free from defects in materials and workmanship under normal use and service in compliance with all bulletins, manuals, and instructions furnished by Pan American, for a period of one (1) year from date of purchase, except where component parts are warranted by other manufacturers, their warranty will apply, and is hereby assigned. Within ten (10) days after discovery of any such defect, purchaser must notify Pan American of such defect. Upon advice from Pan American Hydroponics, Inc., purchaser shall return the defective items, freight prepaid, for inspection to determine whether or not such items of equipment are defective as to materials and workmanship in the sole judgment of Pan American Hydroponics, Inc. Upon determining such items of equipment defective, Pan American will issue credit for the value of such parts and replace same at their option.

Pan American Hydroponics, Inc. does not warrant and purchaser agrees and understands that Pan American Hydroponics, Inc. cannot and does not represent or warrant the quality of production or quantity of production of any plant or plants by use of the merchandise purchased. Pan American Hydroponics, Inc. shall not be liable for any inferior growth of fruits or vegetables, or other plants, and it is agreed that such growth is completely within the control of purchaser, nor shall Pan American Hydroponics, Inc. be liable for any reason in an amount exceeding the original purchase price of the specific item purchased should it be determined to be defective.

Pan American Hydroponics, Inc. shall not be liable for any warranties or representation made by any salesman or officer that does not appear herein and the purchaser is hereby placed on actual notice that no person or other firm has either actual or apparent authority to change this warranty, nor shall Pan American Hydroponics, Inc. be liable for any claims or damages resulting from damage in shipment, or malfunctions of equipment· that are the result of carelessness or failure to follow instructions furnished to purchaser by Pan American Hydroponics, Inc.

This express warranty applies to all merchandise sold by Pan American Hydroponics, Inc. to any purchaser, distributor, dealer, grower, representative, person, firm or corporation and supercedes all other warranties, representations or statements written or oral, expressed or implied, in law or by contract.

(Pan American Hydroponics, Inc. was the original name of American Hydroponics, Inc.)

3. Tex.Code Bus. & Com.Ann., § 2.313 (1968), V.T.C.A., provides:

(a) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

\*　　\*　　\*　　\*　　\*

Comment 5 under the foregoing Section states:

A description need not be by words. Technical specifications, blueprints and the like can afford more exact description than mere language and if made part of the basis of the bargain goods must conform with them.

inconsistent samples, models, or general language of description.[4] American's contention that this specification could not constitute a warranty is without merit.

■ American further contends that its special warranty was sufficient to supersede all other warranties, including the express warranty of the specification as described in the preceding paragraph. The general language of that special warranty does not mention the written express warranty which American had given S-C. The only reasonable interpretation that can be placed on this special warranty in light of the prior specific warranty, is that it applies only to any defects which might be found to exist in the various components and other materials which American sold. Thus, while the special warranty form provided the exclusive remedy should any component be defective, it did not supersede the specific express warranty which extended to the design capability of nondefective structural members intended to perform as an integral part of the greenhouse building.

■ We agree with the court below that the specifications created an express warranty that the structure as a unit would withstand a vertical load of 20 pounds per square foot. Since that court found as a fact that the collapse of the structure was a result of its weakening under a load of less than 20 pounds per square foot, we also agree with the court's conclusion that there was a breach of the express warranty.

■ We further conclude that there was a breach of American's implied warranty of merchantability, since the building was clearly not fit for the ordinary purpose for which such goods are used.[5] The purchase order and the special warranty did not exclude such an implied warranty since the language was not conspicuous and did not mention merchantability.[6]

■ American next urges that, even if there was a breach of any warranty, the recovery is limited by the special warranty to "the original purchase price of the specific item purchased, should it be determined to be defective." In effect, American contends that the court must fragment the greenhouse sale into separate sales of each constituent part and allow a recovery only for the inadequate steel trusses which occasioned the collapse of the structure. While Texas law clearly permits a seller to limit his liability to repair and replacement of goods which do not conform to the contract,[7] we decline to construe the special warranty to have that effect under the facts in this case. American contracted to sell an entire greenhouse with a specific warranty that, if properly constructed according to the plans provided by American, it would withstand a certain load. American was no ordinary seller of construction materials; it had assembled the plans and components for the purpose of enabling the purchaser to acquire a complete hydroponic system. The language of the purported limitation does not so clearly disclaim responsibility for the greenhouse as a unit as to oblige this court to disregard the realities of the situation and view the transaction as a collection of purchases of individual building components.

■ American's final contention, that the statute of limitations bars the claim for the breach of warranty, is also without merit. The earliest date that the cause of action could have accrued was

4. Tex.Code Bus. & Comm.Ann. § 2.317 (1968).

5. Tex.Code Bus. & Comm.Ann. § 2.314 (1968).

6. Tex.Code Bus. & Comm.Ann. § 2.316(b) (1968) provides:

 [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

7. Tex.Code Bus. & Comm.Ann. § 2.719 (1965).

in July of 1967, when the greenhouse components were received. As the suit was instituted on June 17, 1971, it was brought within the applicable four-year statute of limitations.[8]

Affirmed.

---

8. Vernon's Tex.Rev.Civ.Stat.Ann. art. 5527 (1958) ; Tex.Code Bus. & Comm.Ann. § 2.725 (1968).

Since both statutes provide the same limitation period—four years—we do not decide which of the two, if not both, is applicable here.