FRANCES McCARTY ET VIR *v.* E. J.
KORVETTE, INC. ET AL.

[No. 1102, September Term, 1974.]

*Decided November 3, 1975.*

The cause was argued before GILBERT, DAVIDSON and MOORE, JJ.

*J. Hardin Marion,* with whom was *Thomas A. Baker* on the brief, for appellants.

*J. Joseph Curran, Jr.,* for appellee E. J. Korvette, Inc. *E. Charles Dann, Jr.,* with whom was *James D. Peacock* on the brief, for appellee Tires, Inc. *Phillips L. Goldsborough, III,* with whom were *John G. Prendergast, Jr.,* and *Smith, Somerville & Case* on the brief, for appellee Denman Rubber Manufacturing Co.

DAVIDSON, J., delivered the opinion of the Court.

On 25 February 1971, Frances McCarty bought four tires manufactured by Denman Rubber Manufacturing Co., at Korvettes Tire & Auto Centers, a retail outlet located on Baltimore National Pike, which was allegedly operated, pursuant to a franchise and lease from E. J. Korvette, Inc., by Tires, Inc. On the back side of the invoice given to Mrs. McCarty, under the title "Korvette Tire Centers All-Road-Hazards Tire Guarantee," the following language appears:

> "*The tires identified hereon are guaranteed for* the number of months (or miles) designated [*36,000 miles*] *against all road hazards* including stone bruises, impact bruises, *blow out,* tread separation, glass cuts and fabric breaks, only when used in normal, non-commercial passenger car service. *If a tire fails to give satisfactory service under the terms of this guarantee,* return it to the nearest Korvette Tire Center. *We will replace the tire* charging only the proportionate part of the sale price for each month elapsed (or mileage used) from date of purchase, plus the full federal tax.
>
> "The above guarantee does not cover tires run flat, or simply worn out; tires injured by a fire, collision, vandalism, misalignment or mechanical defects of the vehicle. Radial or surface fissures, discoloration or ordinary repairable punctures, do not render tires unfit for service. Punctures will be repaired free.
>
> "*Neither the manufacturer nor Korvette Tire Centers shall be liable for any consequential damage and our liability is limited solely to replacement of the product.*" (Emphasis supplied.)

On 14 June 1971, the appellants, Frances McCarty and her husband, Warren McCarty (consumers), were involved in an automobile accident. As a result of an alleged blowout of the right rear tire, their vehicle swerved off the road and turned over several times causing personal injury to each of them

424

as well as property damage to their car. In the Circuit Court for Baltimore County, the consumers sued E. J. Korvette, Inc., Tires, Inc., and Denman Rubber Manufacturing Co., the appellees, for damages resulting from their alleged breach of express and implied warranties and negligence. At the conclusion of the consumers' case, Judge John Grason Turnbull granted the appellees' motions for directed verdicts. On 4 November 1974, final judgment was entered. It is from that judgment that this appeal is taken.

I

The appellees initially contend that the language contained in the Korvette Tire Centers All-Road-Hazard Tire Guarantee, when read as a whole, does not constitute an express warranty against blowouts, but rather constitutes a guarantee that if a blowout occurs, the tire will be replaced. We do not agree.

Maryland Annotated Code, Comm.L.Art., § 2-313 (1975) [1] [hereinafter referred to as Comm.L.Art.], defines an express warranty, in pertinent part, as follows:

> "(1) Express warranties by the seller are created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." [2]

---

1. The Uniform Commercial Code, effective in Maryland 1 February 1964, now codified in the Commercial Law Article of the Maryland Annotated Code, 1975 Laws of Maryland, Ch. 49, § 2, was formerly codified in Art. 95B of the Code (1957, 1964 Repl. Vol.).

2. Section 30 of the Uniform Sales Act, 1910 Laws of Maryland, Ch. 346, at 275, the predecessor of Comm.L.Art., § 2-313, provided, in pertinent part, that:

> "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."

The Court of Appeals has observed that this Section of the Uniform Sales Act was declaratory of a principle of the common law. Schley v. Zalis, 172

In considering the definition of an express warranty, the Court of Appeals long ago recognized the distinction which exists between an express warranty and an executory promise or contractual undertaking. In *White Automobile Co. v. Dorsey*, 119 Md. 251, 86 A. 617 (1913), it was alleged, in a special count, that the seller represented to the buyer of an automobile that:

> "said automobile was sound, free from defects in workmanship, and materials, and would be satisfactory to the plaintiff, *and that said defendants would keep the same in satisfactory running condition, without expense to the plaintiff, for a period of one year from the date of said purchase.*" *Id.* at 254, 86 A. at 619. (Emphasis in original.)

In the same count, the buyer alleged that the contract had been breached because the automobile was "unsound and defective as to workmanship and material," and "constantly required repairs," and because the sellers failed and refused to put the car "in good order and repair." The Court of Appeals held that a demurrer to this count should have been sustained, stating:

> "The count combines two distinct causes of action; first, a breach of the express warranty that the automobile 'was sound, free from defects in workmanship and material, . . .'; and secondly, a breach of a contract on the part of the defendants 'to keep the same in satisfactory running condition, without expense to the plaintiff, for a period of one year from the date of said purchase.'" *Id.* at 256, 86 A. at 619.

The Court then concluded that the two separate causes of action should have been pleaded in separate counts.

The Court thus recognized that language relating to the existing qualities, capabilities and condition of goods con-

Md. 336, 339, 191 A. 563, 564 (1937); Rittenhouse, Winterson Auto Co. v. Kissner, 129 Md. 102, 105, 98 A. 361, 362 (1916).

stituted an express warranty. Language promising that the seller would repair goods in the event of a breach of the warranty, did not relate to the existing qualities, capabilities or condition of the goods, and, consequently, did not constitute an express warranty, but rather an executory contractual undertaking to be performed in the future.

In the case of *Rittenhouse, Winterson Auto Co. v. Kissner*, 129 Md. 102, 98 A. 361 (1916),[3] it was alleged that the seller represented to the buyer of a truck that it:

> "was a first class car, was as good as new and was in sound and first class condition; and *that if it was not abused but handled with care, it would last the plaintiff at least four years." Id.* at 104, 98 A. at 362. (Emphasis added.)

The breaches charged in the same count were that the truck was "unsound and in bad condition" and "did not last the plaintiff at least four years."

In *Rittenhouse*, as in *White*, a demurrer was filed, contending that the special count for breach of warranty was improper because the assurance as to the serviceability of the truck for the period of four years was not a warranty, but, at most, an executory undertaking which could not properly be combined in one count with the warranties as to the truck's quality and condition. In considering the applicability of *White*, the Court said:

> "In that case, however, the averment held objectionable, when made in combination with the breach of warranty declared on in the same count, was that the defendants failed to perform their agreement to keep the automobile sold by them to the plaintiff in satisfactory running order, without expense to him for one year from the date of the purchase. This assumption of an affirmative contractual duty was essentially different from the representation here relied upon as to the time

---

**3.** This case arose when Section 30 of the Uniform Sales Act was in effect. *See* note 2 above.

during which the motor truck was capable of rendering efficient service. *The assurance to that effect was not an executory promise, but had reference to an existing quality or capacity, and was hence closely akin to the other representations with which it was joined.* In our opinion the demurrer was properly overruled." *Id.* at 104-05, 98 A. at 362. (Emphasis added.)

Thus, the Court of Appeals reasserted its previously drawn distinction between an express warranty and an executory promise. An assurance that a truck would perform in a certain way for a given period of time in the future constituted an express warranty because it had reference to *the existing quality, capacity or condition of the goods.* An assurance that the seller would, at some time in the future, perform certain services in the event that the goods should not conform to the representation, so that the warranty was breached, constituted an executory promise or contractual undertaking because it had reference, not to the existing quality, capacity or condition of the goods, but rather to the assumption of an affirmative contractual duty to be performed in the future.

There is nothing in the language of Comm.L.Art., § 2-313 which requires a departure from these basic principles which were applied under both the common law and the Uniform Sales Act. Applying these principles to the instant case produces a clear result.

Here the language on the invoice given to the buyer to the effect that "the tires identified hereon are guaranteed for 36,000 miles . . . against all road hazards, including . . . blow out . . ." constitutes an affirmation that the tires are of such existing quality, capacity and condition as to make them capable of rendering service without blowing out before they have been used for 36,000 miles. This assurance of the serviceability of the tires for a given number of miles, because it is a representation as to the existing quality, capacity and condition of the tires, constitutes an express warranty that the tires will not blow out during the first 36,000 miles of use.

Questions remain as to what impact the additional language appearing on the invoice has upon the scope and extent of the express warranty. Comm.L.Art., § 2-316[4] specifically recognizes a right on the part of the warrantor to negate, modify or limit an express or implied warranty under certain circumstances. It also implicitly recognizes that warranties may be limited in two different ways — one by "disclaiming" the warranty or a part of the warranty itself in the manner prescribed by subsections (1) — (3), and the other by "limiting the remedy" available upon breach (subsection (4)) in the manner prescribed by Comm.L.Art., §§ 2-718 and 2-719.[5]

---

**4.** "§ 2-316. Exclusion or modification of warranties.

"(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this subtitle on parole [parol] or extrinsic evidence (§ 2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

"(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

"(c) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

"(4) *Remedies for breach of warranty can be limited in accordance with the provisions of this subtitle on liquidation or limitation of damages and on contractual modification of remedy* (§§ 2-718 and 2-719)." (Emphasis added.)

**5.** The difference between the two modes of negating or modifying a warranty has been clearly expressed in J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 12-11, at 383-84 (1972):

"A disclaimer clause is a device used to exclude or limit the

Here the language which says that the guarantee applies only when the tires are used in normal non-commercial passenger car service, and does not apply to tires that are run flat, or simply worn out, injured by a fire, collision, vandalism, misalignment or mechanical defects of the vehicle, constitutes a disclaimer under Comm.L.Art., § 2-316 (1). The language which not only promises to replace the tire if a blowout occurs, but also attempts to avoid consequential damages and restrict the remedies of the buyer solely to replacement, constitutes a limitation of remedies under Comm.L.Art., § 2-316 (4), governed by the provisions of Comm.L.Art., § 2-719.[6] Comm.L.Art., § 2-316.1 is inapplicable.[7]

Comm.L.Art., § 2-719 gives the parties considerable latitude in which to fashion their remedies to their

seller's warranties; it attempts to control the seller's liability by reducing the number of situations in which the seller can be in breach. An exclusionary clause [limitation of remedies], on the other hand, restricts the remedies available to one or both parties once a breach is established. Assume, for example, that a new-car buyer sues for breach of warranty, and the seller raises defenses based on disclaimer and exclusionary clauses. The disclaimer defense denies the existence of any cause of action. The exclusionary-clause defense, on the other hand, denies that the buyer is entitled to the remedy he demands — for example, consequential damages. . . ."

**6.** Comm.L.Art., § 2-316, Official Comment 2, provides, in pertinent part:

"This title treats the limitation or avoidance of consequential damages as a matter of limiting remedies for breach, separate from the matter of creation of liability under a warranty. If no warranty exists, there is of course no problem of limiting remedies for breach of warranty. Under subsection (4) the question of limitation of remedy is governed by the sections referred to rather than by this section."

*See* Cyclops Corp. v. Home Insurance Co., 389 F. Supp. 476, 478 (W.D. Pa. 1975); Potomac Electric Power Co. v. Westinghouse Electric Corp., 385 F. Supp. 572, 578 (D.C. D.C. 1974); S-C Industries v. American Hydroponics Systems, Inc., 468 F. 2d 852, 855 (5th Cir. 1972).

**7.** Comm.L.Art., § 2-316.1, Limitation of exclusion or modification of warranties to consumers, provides, in pertinent part:

"(1) The provisions of § 2-316 [including subsection (4)] do not apply to sales of consumer goods, as defined by § 9-109, services, or both."

The fact that the instant warranty was made on 25 February 1971 precludes the applicability of § 2-316.1 which did not become effective until 1 July 1971. *See* Blankenship v. Morrison Machine Co., 255 Md. 241, 247, 257 A. 2d 430, 433 (1969).

particular requirements.[8] It expressly recognizes that parties may limit their remedies to repair and replacement. The parties, however, must accept the legal consequence that there be some fair remedy for breach of the obligations or duties outlined in the contract. Reasonable agreements which limit or modify remedies will be given effect, but the parties are not free to shape their remedies in an unreasonable or unconscionable way.[9] Comm.L.Art., § 2-719 (3) recognizes the validity of clauses limiting or excluding consequential damages, otherwise available under Comm.L.Art., § 2-714 (3), but expressly states that they may not operate in an unconscionable manner. That subsection also establishes that limitation of consequential damages for injury to the person in the case of consumer goods is *prima facie* unconscionable.[10]

---

**8.** Comm.L.Art., § 2-719, Contractual modification or limitation of remedy, provides, in pertinent part:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

"(a) The agreement may provide for remedies in addition to or in substitution for those provided in this title and may limit or alter the measure of damages recoverable under this title, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

"(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Titles 1 through 10 of this article.

"(3) *Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.*" (Emphasis added.)

Comm.L.Art., § 2-714 (3) provides that "[i]n a proper case any incidental and consequential damages under the next section may also be recovered." *See* Fred J. Miller, Inc. v. Raymond Metal Products Co., 265 Md. 523, 528, 290 A. 2d 527, 530 (1972).

Comm.L.Art., § 2-715 (2) (b) defines consequential damages as "injury to person or property proximately resulting from any breach of warranty."

Comm.L.Art., § 9-109 (1) defines consumer goods as goods "used or bought for use primarily for personal, family or household purposes."

**9.** Comm.L.Art., § 2-719, Official Comment 1; *see* W. Hawkland *A Transactional Guide to the Uniform Commercial Code* § 1.28 (1964).

**10.** Comm.L.Art., § 2-719, Official Comment 3.

Comm.L.Art., § 2-302 (1) sets forth the alternatives available to a court when it finds a limitation of remedy to be unconscionable.[11] That section permits the court in its discretion, after a finding of unconscionability, to refuse to enforce the contract as a whole, if it is permeated by the unconscionability, or *to strike any single clause or group of clauses which are so tainted* or which are contrary to the essential purpose of the agreement, or to simply limit unconscionable clauses so as to avoid unconscionable results.[12] Thus, any clause purporting to modify or limit remedies in an unconscionable manner is subject to deletion and will not be given effect.[13]

Here the executory promise to replace the tire in the event of a blowout, found in the first paragraph of the warranty, is, in and of itself, nothing more than an express statement that the remedy of replacement is available in addition to all of the other remedies provided by law.[14] But that executory promise, coupled with the clause purporting to exclude liability for consequential damages and to limit liability solely to replacement, clearly expresses an intent that replacement be the sole remedy under the contract.

The record shows, however, that the warranted tires which Mrs. McCarty purchased were bought for "her" stationwagon, which was ordinarily driven about 150 miles per week; that she did not seek damages for loss of employment; and that her husband was employed as a "locomotive engineer" and did not, therefore, use an

---

11. Comm.L.Art., § 2-302 (1) provides:

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or *it may enforce the remainder of the contract without the unconscionable clause*, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Emphasis added.)

12. Comm.L.Art., § 2-302, Official Comment 2.

13. Comm.L.Art., § 2-719, Official Comment 1.

14. Comm.L.Art., § 2-719 (1) (b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend such a clause to describe the sole remedy under the contract, such intent must be clearly expressed. Comm.L.Art., § 2-719, Official Comment 2.

automobile for business purposes. This evidence supports a rational inference that the warranted tires here constitute consumer goods as defined by Comm.L.Art., § 9-109,[15] so that the provisions of Comm.L.Art., § 2-719 (3) are applicable.

The clause purporting to limit the consumers' remedy solely to replacement of the tire purports to exclude liability for both personal injury and property damage. At trial, the appellees presented no evidence to show that the purported exclusion of consequential damages for personal injury was not unconscionable. Accordingly, to the extent that the clause purports to limit consequential damages for personal injury, it is unconscionable as a matter of law.

In *Collins v. Uniroyal, Inc.*, 64 N. J. 260, 315 A. 2d 16 (1974), the Supreme Court of New Jersey held that an express warranty against blowouts had been breached when a blowout occurred, notwithstanding the fact that a defect in the material and workmanship in the tire had not been proved. There, the express warranty provided:

> "ROAD HAZARD — In addition, every such U.S. Royal Master tire, when used in normal passenger car service, is guaranteed during the life of the original tread against blowouts, cuts, bruises, and similar injury rendering the tire unserviceable. Tires which are punctured or abused, by being run flat, improperly aligned, balanced, or inflated, cut by chains or obstructions on vehicle, damaged by fire, collision or vandalism, or by other means, and 'seconds' are not subject to the road hazard provision of this Guarantee.
>
> . . .
>
> "This Guarantee does not cover consequential damage, and the liability of the manufacturer is limited to repairing or replacing the tire in accordance with the stipulations contained in this

---

15. *See* note 8 above.

Guarantee. No other guarantee or warranty, express or implied, is made." *Id.*, 315 A. 2d at 19.

The Court cogently expressed the reasons for regarding a provision limiting the remedy to replacement of the tire to be "patently" unconscionable, and, therefore, invalid by stating:

> "A tire manufacturer warrants against blowouts in order to increase tire sales. Public advertising by defendant relative to these tires stated: 'If it only saves your life once, it's a bargain.' The seller should be held to realize that the purchaser of a tire buying it because so warranted is far more likely to have made the purchase decision in order to protect himself and the passengers in his car from death or personal injury in a blowout accident than to assure himself of a refund of the price of the tire in such an event. That being the natural reliance and the reasonable expectation of the purchaser flowing from the warranty, it appears to us patently unconscionable for the manufacturer to be permitted to limit his damages for a breach of warranty proximately resulting in the purchaser's death to a price refund or a replacement of the tire. We consequently agree with the determination of the Appellate Division that the statutory presumption of unconscionability was not here overcome and that the trial court ruled correctly on the issue." *Id.*, 315 A. 2d at 18.[16]

While there is no statutory presumption of unconscionability with respect to a limitation of consequential damages for injury to property in the case of consumer goods, the rationale in *Collins* persuades us that the clause here, which attempts to exclude liability for both personal injury and property damage is so tainted by unconscionability as to warrant deletion in its entirety. If

---

**16.** *Accord,* Matthews v. Ford Motor Co., 479 F. 2d 399, 402 (4th Cir. 1973); *cf.* Ford Motor Co. v. Tritt, 430 S.W.2d 778, 781 (Ark. 1968).

the appellees do not want to be liable for consequential damages, they should not expressly warrant the tires against blowouts.[17]

Under the present circumstances, the clause purporting to restrict remedies solely to replacement is ineffective. It cannot serve to convert the express warranty against blowouts into a guarantee that if a tire blew out, "the tire would be replaced."

## II

The appellees next contend that even assuming the existence of an express warranty, the grant of the motions for directed verdicts here was proper because there was insufficient evidence to show a breach of that warranty. Relying upon *Little v. Woodall,* 244 Md. 620, 224 A. 2d 852 (1966), they initially assert that the express warranty here is not an unconditional warranty against blowouts during the first 36,000 miles, but rather is limited to or conditioned upon a defect in materials or workmanship. They assert that no evidence of such a defect was presented. In addition, they argue that there was insufficient evidence presented to show that a blowout, which was not a direct result of a warranty exclusion, had occurred.

In *Little,* a buyer had entered into a contract for the installation of an aluminum awning carport. The contract between the parties was printed, except that the description of the awning to be installed, the price to be paid, and the words "Fully guaranteed" were handwritten. One of the printed provisions indicated that the contract was "subject to strikes, meteorological conditions and other conditions" beyond the appellant's control. Parol evidence showed that just before the words "Fully guaranteed" were inserted, the seller had said that the awning was guaranteed "against anything." "This thing is up to stay. You will never have to

---

**17.** Comm.L.Art., § 2-719, Official Comment 3, provides:

"The seller in all cases is free to disclaim warranties in the manner provided in Section 2-316."

worry about it. . . . Once this thing is up it will stay up." "Nothing would bring it down." The buyer testified that the carport was "never caulked right" so that there was constant leaking between the carport and the house, a condition which was never successfully remedied by the seller. Ultimately, during a snow storm in which the snow was "wet and melting fast" the carport pulled loose from the house at the place of leakage and collapsed on the buyer's car. There was evidence to show that the accumulation of snow the night before the awning fell was about four inches and that no other carport on the street had collapsed.

The Court of Appeals found the language of the warranty to be ambiguous, and construed the guarantee as one limited to the durability of the material and quality of the workmanship. In reaching this conclusion, the Court said:

> "A warranty that the article sold will last for a certain time, if unconditional, is binding upon the seller. *Rittenhouse, Winterson Auto. Co. v. Kissner,* 129 Md. 102, 98 Atl. 361 (1916); Williston, *Sales* § 212 (Rev. Ed. 1948). However, the phrase 'Fully guaranteed,' of itself, means no more than that the work shall be done in a good and workmanlike manner and that the material will be adequate for the designated purpose in accordance with the contract. *Pychinka v. Keystone Home Improvement Co.,* 4 D. & C. 2d 492 (Pa. Com.Pleas 1955). Even in the light of the oral testimony, the clear intent of the guarantee within the context of the entire contract is that the carport will stay up, as far as the materials and workmanship are concerned. The printed clause in the contract, which is below the written guarantee, that the contract is subject to meteorological and other conditions beyond the appellant's control, shows that the guarantee was not intended to be unconditional, but was limited to the durability of the material and the quality of the workmanship." *Id.,* 244 Md. at 625, 224 A. 2d at 855.

The Court then held that there was sufficient evidence before the trier of the facts to show that the warranty, even

though confined to material and workmanship, had been breached.

We have previously held that the language appearing on the invoice given to the consumers here creates an express warranty that the tires purchased will not blow out before they have been driven 36,000 miles. There is no statement on that invoice that the tires are "fully guaranteed." Nor is there any statement that the contract is subject to conditions beyond the appellees' control. Indeed, the language of this warranty to the effect that it is a warranty against *all road hazards*, including not only blowouts, tread separations and fabric cuts, but also stone bruises, impact bruises and glass cuts, shows that this guarantee is not intended to be limited to conditions within the warrantor's control, such as defects in material and workmanship. Rather, the warranty is intended to assure the consumers of protection from all hazards of the road, including a blowout resulting from any cause other than one which has been validly disclaimed. In short, the language of this express warranty is unambiguous and clear. It constitutes a warranty that the quality, capacity and condition of the tires is such that they will not suffer a blowout from any cause other than those disclaimed, during the first 36,000 miles of use.

Ordinarily, a consumer must show that the product about which he complains is defective in some manner and that the defect caused his injury.[17a] In most circumstances, a "defect" will consist of something that is "wrong" with the product at the time it leaves the control of the warrantor, such as a defect in material or workmanship, which causes the product to fail to perform properly and consequently to cause injury to its user.[18] Yet, in certain situations:

---

**17a.** R. Hursh & H. Bailey, *American Law of Products Liability 2d*, § 1:7, at 16-21 (1974).

**18.** Addressograph-Multigraph Corp. v. Zink, 273 Md. 277, 283, 329 A. 2d 28, 32 (1974); Little v. Woodall, 244 Md. 620, 626, 224 A. 2d 852, 855-56 (1966); McCeney v. Duvall, 21 Md. 166, 185 (1864); *see* Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc., 273 Md. 592, 607-09, 332 A. 2d 1, 10-11 (1975).

"[E]ven a properly made or perfectly made product may be regarded as defective. Thus, in an action for injuries from the breach of an express warranty, the test of defectiveness is whether the product performs in accordance with the express warranty given." [19]

It is axiomatic in Maryland that an express warranty is breached when a product fails to exhibit the properties, characteristics, or qualities specifically attributed to it by its warrantor, and therefore fails to conform to the warrantor's representations.[20] The breach of an express warranty of materials and workmanship is established by proof of defects in the material or workmanship.[21] The breach of an express warranty that a roof will not leak for 15 years is established by evidence that during that period of time the roof leaked.[22] The breach of an express warranty that pipes would seal upon spill going through is established by evidence that when the pipe was assembled and installed, the joints did not seal when spill was pumped through under pressure, and there was leakage.[23] The breach of an express warranty that a product will last for four years is established by evidence that the product did not last for that period of time.[24] Thus, no "defect" other than a failure to conform to the warrantor's representations need be shown in order to establish a breach of an express warranty.

Had the tire here involved been warranted only against defects in material and workmanship, the consumers, in order to establish a breach of warranty, would have had to show that the blowout was caused by such a defect existing at the time the tire left the warrantor's control. But since the tire here involved is warranted, during its first 36,000

---

19. R. Hursh & H. Bailey, *supra* note 17a, at 20-21.

20. Comm.L.Art., § 2-313.

21. Addressograph-Multigraph, *supra*, 273 Md. at 283, 329 A. 2d at 32; Little, *supra*, 244 Md. at 626, 224 A. 2d at 855.

22. Corelli Roofing Co., Inc., v. National Instrument Co., Inc., 240 Md. 627, 632, 214 A. 2d 919, 921 (1965).

23. Fred J. Miller, Inc. v. Raymond Co., 265 Md. 523, 525, 528, 290 A. 2d 527, 528, 530 (1972).

24. Rittenhouse, *supra*, 129 Md. at 108-09, 98 A. at 363.

miles, against a blowout resulting from a cause other than one validly disclaimed, the consumers need show nothing more than that a blowout occurred, and that the conditions under which coverage was disclaimed did not exist. The fact of such a blowout establishes that the tire is "defective" within the meaning of the express warranty, because it does not possess the properties specifically attributed to it by the warrantor and, thus, fails to conform to the warrantor's representations. Other courts agree.[25]

We must also reject the appellees' contention that there was insufficient evidence to show that a blowout, resulting from a cause not validly disclaimed, had occurred. Here the consumers testified as to the circumstances surrounding the accident. There was evidence to show that four warranted tires were purchased by Mrs. McCarty from Korvettes Tire & Auto Centers on 25 February 1971. Within the week, they were mounted on Mrs. McCarty's 1965 stationwagon by Korvettes Tire & Auto Centers. During the following week, Mrs. McCarty had the wheels of the wagon balanced and the front end aligned. On 28 May 1971, in preparation for a vacation trip, Mrs. McCarty had the car, including the brakes and wheel cylinders, checked.

On 14 June 1971, at about 10:00 a.m., the McCartys, then on the way home from their vacation, left Abilene, Texas, and headed for Little Rock, Arkansas. Before leaving on that morning, Mr. McCarty checked the pressure in the tires with his tire pressure gauge, as he had done every morning of the

---

**25.** Hansen v. Firestone Tire & Rubber Co., 276 F. 2d 254, 257 (6th Cir. 1960); Senter v. B.F. Goodrich Co., 127 F. Supp. 705, 710 (D. Colo. 1954); Collins, *supra*, 315 A. 2d at 17; *see* Ein v. Goodyear Tire & Rubber Co., 173 F. Supp. 497, 499 (N.D. Ind. 1959).

The cases relied upon by the appellees are inapposite. None of them involves an express warranty against blowouts. The question of the nature of the defect which must be shown in order to establish the breach of such a warranty is not considered. *See* Lucas v. Firestone Tire & Rubber Co., 458 F. 2d 495 (5th Cir. 1972); Markwell v. General Tire & Rubber Co., 367 F. 2d 748 (7th Cir. 1966); Van Winkle v. Firestone Tire & Rubber Co., 253 N.E.2d 588 (App.Ct. Ill. 1969); Shramek v. General Motors Corp., 216 N.E.2d 244 (App.Ct. Ill. 1966); Williams v. U.S. Royal Tires, 101 So. 2d 488 (La. App. 1958); Halpern v. Jad Construction Corp., 244 N.Y.Supp.2d 147 (App.Div. 1963); Malinak v. Firestone Tire & Rubber Co., 436 S.W.2d 210 (Tx.Cv. App. 1968).

trip. He determined that the tires were properly inflated in accordance with the standards set forth in the owner's manual. He then drove, without experiencing anything unusual in the operation or handling of the car, about 450 miles to a small town called Prescott, Arkansas, where, at about 7:00 p.m., the McCartys stopped to refuel. While the gas station attendant was filling the tank and adding a quart of oil, Mr. McCarty made a visual inspection of the four tires, all of which then appeared to be properly inflated. After the servicing of the car was completed, Mrs. McCarty took over the driving.

At about 7:30 p.m., approximately 15 minutes after she had begun to drive, Mrs. McCarty was driving in Arkadelphia, Arkansas, along Interstate 30, a four lane, divided highway which was level and straight and afforded her a totally unobstructed view. It was still daylight. The temperature was about 80 degrees; the weather was "beautiful," and there was no rain. There was very little traffic moving along the road and there was nothing unusual in the operation or handling of the car. According to Mrs. McCarty, "[t]he next thing I knew I hear this bang, which I thought it was a jet overhead, until I couldn't control the car, and the car started fishtailing from side to side, and everything, like it come back over to the left side and hit the gravel, and she spun over, and rolled over on us, rolled two and a half times." Her personal inspection of the tires, made immediately after the accident, revealed that "the back right tire was terribly mangled." According to Mr. McCarty, at the time of the accident he had "just about half dozed off, and was in this state at the time the tire blew out, the explosion woke me up, it sounded something like a cannon going off." The rear of the car started "swaying" from side to side until the car became uncontrollable and ultimately turned over two-and-one-half times. His visual inspection of the tires, made immediately after the accident, revealed that the "right rear tire was all chewed up around the rim, as if it was blown, and the other tires were all okay."

Finally, there was evidence to show that the tires purchased from Korvettes Tire & Auto Centers had never

been removed from the vehicle and had been driven between 5,500 and 7,000 miles before the accident occurred.

The term "blowout" used as a noun, is defined in the American Heritage Dictionary of the English Language as:

> "A sudden rupture or bursting, as of an automobile tire."

The same term is defined in Webster's International Dictionary, 2nd Edition, as:

> "A bursting of a container caused by the weight or pressure of the contained material, as ... of a pneumatic tire by pressure of the contained air on a weak spot."

The word, as it relates to tires, is one commonly understood by laymen.

In our opinion, the evidence of the circumstances surrounding the deflation of the right rear tire of the McCarty stationwagon, viewed in the light most favorable to the consumers,[26] was sufficient to support a rational inference that that tire had ruptured or burst and that a blowout of that tire, which was not a direct result of a warranty exclusion, had taken place. It was also sufficient to show that the blowout was the proximate cause of the personal injuries and property damage suffered by the consumers. Accordingly, we hold that there was evidence sufficient to require submission to the jury of the questions of whether there was a breach of an express warranty which was the proximate cause of injury to the consumers.

Having determined that the language contained in the Korvette Tire Centers All-Road-Hazards Tire Guarantee constitutes an express warranty against blowouts resulting from any cause other than one validly disclaimed, and that the evidence was sufficient to require submission to the jury

---

**26.** In deciding whether a motion for directed verdict was properly granted, we must consider the evidence, together with all reasonable and legitimate inferences which may be deduced therefrom, in the light most favorable to the party against whom the motion was directed. Ramsey v. D.P.A. Associates, 265 Md. 319, 320-21, 289 A. 2d 321, 322 (1972); Shipp v. Autoville Ltd., 23 Md. App. 555, 560-61, 328 A. 2d 349, 353 (1974).

of the questions of whether the right rear tire of the consumers' car did, in fact, blow out and whether as a result of that blowout they suffered personal injury and property damage, we conclude that the motions for directed verdicts should have been denied. The judgment will be reversed and the case remanded for a new trial.

The other contentions raised by the consumers need not be considered here. Moreover, the contentions here of E. J. Korvette, Inc., and Tires, Inc., raised only by E. J. Korvette, Inc., below, that the appellants failed to show that an express warranty existed between them because they failed to establish that there was a sale by E. J. Korvette, Inc., and/or Tires, Inc., to them, or a contract for sale between them as required by Comm.L.Art., § 2-313, as well as their contentions here, not raised by either below, that the appellants failed to prove that they gave reasonable notice of the alleged breach of warranty as required by Comm.L.Art., § 2-607 (3) (a) are not properly before us because they were not decided below. Similarly, the contention of Denman Rubber Manufacturing Co., that any express warranty which may have been created was made only by E. J. Korvette, Inc., and not by Denman Rubber Manufacturing Co., is not appropriately before us because it was neither raised nor decided below.[27]

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Costs to be paid by appellees.*

---

27. Maryland Rule 1085; Raitt v. The Johns Hopkins Hospital, 274 Md. 489, 497, 336 A. 2d 90, 94 (1975); *see* Maryland Rule 552 a.