## GEORGE WILLIAM BARB ET AL. *v.* ROBERT WALLACE

[No. 814, September Term, 1979.]

*Decided April 11, 1980.*

The cause was argued before LOWE, MELVIN and COUCH, JJ.

*John J. Coyle, Jr.,* with whom was *Gary G. Leasure* on the brief, for appellants.

*Robert H. Reinhart,* with whom were *Walsh, Walsh & Reinhart* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

At the age of sixteen, George William Barb purchased a small, used gasoline powered engine for five dollars from Robert Wallace for use in a go-cart. A short while after George returned home he attempted to start the engine, which was mounted on a sturdy base at the time of purchase. Almost immediately upon starting, the engine exploded and caused severe injuries to George's head. George and his father, appellants here, sued appellee, Robert Wallace, in the Circuit Court for Allegany County. Appellee's demurrer to the original declaration was sustained; appellants then filed an amended declaration containing three counts. Count One sounded in tort and claimed that appellee failed to warn George that the engine had an internal defect of which appellee was aware. Count Two alleged breaches of express and implied warranties. Count Three was brought by George's father to recover the expenses incurred as a result of the engine's explosion. Appellee pleaded to the amended declaration, generally denying any responsibility.

Appellee's attorney filed a motion for summary judgment, which was accompanied by the depositions he had taken of George and George's mother. Written memoranda of law were submitted by both sides, but no hearing was held on the motion since none was requested. Following consideration of the pleadings, depositions, and memoranda, the trial court concluded that appellee was entitled to summary judgment on all counts. George and his father appeal the entry of judgment in appellee's favor.

Appellants take issue with the trial court's entry of summary judgment on Count Two, which alleges that appellee breached both an express warranty and an implied warranty of fitness for a particular purpose, and on Count Three, which seeks recovery of medical expenses incurred by George's father. Appellants concede that summary judgment was properly entered with respect to Count One since there was no evidence to support their contention.

George, in his deposition taken by appellee's attorney, described the circumstances attendant to his purchase of the

engine and the accident which followed. We shall set forth the relevant excerpts from that dispostion:

"Q. At the time that you purchased the motor, did you have any conversation with the Defendant Mr. Wallace about it?

A. Yes.

Q. Do you recall what that conversation was?

A. Yes. I asked him if the engine ran good, and he said he had been using it for uses around the farm, and he said it ran real good.

\* \* \*

Q. Did you indicate to him what use you were going to make of it?

A. Yes.

Q. And what was that?

A. A go-cart.

Q. What else can you recall now of any conversation you had with Mr. Wallace about that motor?

A. That was about all we talked about. He told me it ran good. And I told him I was, you know, wanted it for a go-cart. And he said it would work cause the shaft was out of the side of the engine.

\* \* \*

Q. You did not try to start it at that time?

A. No. I told him I didn't want to start it. I took his word that it ran good. Because I didn't want to put it in the car hot and run it home.

Q. Can you describe how you start this particular motor?

A. It had a kick starter. And all he told me I had to do was just kick down on it and it would start. And I wanted to shut it off press against the spark plug, the metal cap that come up, and it would shut it off.

Q. Could you have started it right there?

* * *

A. At his property?

Q. Yes.

A. Yeah. It had gas and all in it he told me.

* * *

Q. Did you in fact install this engine in a go-cart?

A. No, I didn't.

Q. What did you do with it when you took it from his premises?

A. I took it to my house, and took it out of the car and set it on my grandmother's back porch.

* * *

Q. When did you first attempt to start it?

A. About twenty minutes after I was home.

Q. On her back porch?

* * *

A. Uh huh.

Q. You attempted to start it by depressing it with your foot?

A. Uh huh.

Q. Had you put gasoline in it?

A. No. I didn't have to.

Q. You didn't put anything in it?

A. No. But it was ready to start he said.

Q. You didn't do anything but just put your foot on it and depress the starting lever or kick starter?

* * *

A. Press it down. Uh huh.

Q. And what happened when you did that?

A. I heard it start, and then that's all I remember.

Q. What happened to the engine?

A. I have no idea. I guess it blew up. Cause that's

all I remember is hearing it start, and then it just
— that was it."

It is well established that summary judgment procedure
under Md. Rule 610 is not a substitute for trial but rather is
a determination of whether there are disputed issues of fact
that should be tried. *See Merchants Mtg. Co. v. Lubow,* 275
Md. 208, 339 A.2d 664 (1975), and *Impala, Ltd. v. Impala
Sales (U.S.A.) Inc.,* 283 Md. 296, 389 A.2d 887 (1978).
Furthermore, it is also well settled that in determining
whether a summary judgment should be granted, all facts
and inferences drawn from those facts should, at that stage
of the proceedings, be viewed in the light most favorable to
the party against whom summary judgment is sought.
*Mazur v. Scavone,* 37 Md. App. 695, 378 A.2d 1355 (1977);
*see also Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980).
Keeping these considerations in mind, we shall
examine the allegations in Count Two and the
record, particularly George's deposition, to determine
whether there was a genuine dispute as to the existence of
an express warranty and an implied warranty of fitness for
a particular purpose.

## Express Warranty

*Md. Com. Law Code Ann.* (hereinafter U.C.C.), Section
2-313 (1975), provides in pertinent part:

"(1) Express warranties by the seller are created
as follows:

(a) any affirmation of fact or promise made by
the seller to the buyer which relates to the
goods and becomes a part of the basis of the
bargain creates an express warranty that the
goods shall conform to the affirmation or
promise."

The only statement of fact before the court bearing on this
issue appears in George's deposition. Appellants claim that
appellee's assurances, made prior to the sale, that the engine

"ran real good", was ready to start, that he had been using it around the farm, and that it would work for a go-cart since "the shaft was out the side of the engine", viewed in a light most favorable to appellants, reveal that the seller (appellee) made an affirmation of fact to the buyer relating to the goods which became a part of the basis of the bargain.

Appellee's response focuses only upon the following excerpt from George's deposition:

"Q. Do you recall what the conversation was?

A. Yes. I asked him if the engine ran good, and he said he had been using it for uses around the farm, and he said it ran real good."

Appellee contends that this statement is a recounting of appellee's experience with the engine and cannot fairly be regarded as part of the negotiated contract of sale, although at argument appellee conceded that the statement formed the basis of the bargain. According to appellee, the import of appellee's statement was that he had used the engine around his farm and that it functioned properly at that time for the uses to which it was put by appellee. Reliance is placed upon our decision in *McCarty v. E. J. Korvette,* 28 Md. App. 421, 347 A.2d 253 (1975), for the proposition that appellee's statement does not relate to existing quality, capability, or condition of the object. Language couched in the past tense, in appellee's view, relates to past quality, capability, or condition.

We can view neither *McCarty* nor George's account of the transaction as narrowly as appellee urges. Judge Davidson for this Court in *McCarty, supra* at 425, observed that in *White Automobile Co. v. Dorsey,* 119 Md. 251, 86 A. 617 (1913), the Court of Appeals, prior to the adoption of the U.C.C. in Maryland, recognized that language relating to the existing qualities, capabilities, and condition of goods constituted an express warranty. The Court drew a distinction, however, between an express warranty and "[l]anguage promising that the seller would repair goods in the event of a breach of the warranty, [which] . . . did not constitute an express warranty, but rather an executory

contractual undertaking to be performed in the future."
*McCarty, supra* at 426.

In *Rittenhouse, Winterson Auto Co. v. Kissner,* 129 Md.
102, 98 A. 361 (1916), the Court found an express warranty,[1]
rather than an executory promise in the seller's assurance
that a truck would perform in a certain way for a given
period of time in the future. The Court of Appeals stated
that, "The assurance to that effect was not an executory
promise, but had reference to an existing quality or capacity,
and was hence closely akin to the other representations with
which it was joined." *Id.* at 105. Judge Davidson, following
a determination that § 2-313 required no "departure from
these basic principles which were applied under both the
common law and the Uniform Sales Act", considered the
warranty in *McCarty* and concluded:

> "Here the language on the invoice given to the
> buyer to the effect that 'the tires identified hereon
> are guaranteed for 36,000 miles . . . against all road
> hazards, including . . . blow out . . .' constitutes an
> affirmation that the tires are of such existing
> quality, capacity and condition as to make them
> capable of rendering service without blowing out
> before they have been used for 36,000 miles. This
> assurance of the serviceability of the tires for a
> given number of miles, because it is a
> representation as to the existing quality, capacity
> and condition of the tires, constitutes an express
> warranty that the tires will not blow out during the
> first 36,000 miles of use."

*McCarty v. Korvette, Inc., supra* at 427.

While both *McCarty* and *Rittenhouse* involved warranties
concerning the future performance of the goods, we believe

---

1. In Rittenhouse, Winterson Auto Co. v. Kissner, *supra,* it was alleged
that seller represented to the buyer of a truck that it:

> "was a first class car, was as good as new and was in sound and first
> class condition; and that if it was not abused but handled with care,
> it would last the plaintiff at least four years." *Id.* at 104.

the rationale of those two cases governs the present factual situation involving an affirmation of past performance which refers directly to the existing qualities, capabilities or condition of the goods. We believe that two inferences can be drawn from George's version of appellee's statement made prior to the sale that "(appellee) had been using (the engine) around the farm, and he said it ran real good." The first inference, drawn by appellee, that appellee was merely relating his past experience with the engine, would provide no basis for the finding of an express warranty under § 2-313 since it does not have any reference to the existing qualities, capabilities or condition of the goods. Appellee, however, views this portion of George's testimony in a vacuum. We believe it reasonably can be inferred that George's inquiries centered upon the present condition of the engine and appellee's answers were responsive to George's concern. George also related that he refused an opportunity to start the engine because, "I took his word that it ran good . . . And all he told me I had to do was just kick down on it and it would start." From this, an inference can be drawn that appellee's side of the discussion referred to the existing quality, capability, and condition of the goods and not strictly to the engine's past performance, which is the inference appellee would have us draw. The facts here are susceptible of more than one permissible inference and the choice between these inferences should be made by the trier of fact and should not be resolved on a motion for summary judgment. *Washington Homes v. Interstate Land Development*, 281 Md. 712, 382 A.2d 555 (1978).

Our review of cases in other states which have adopted § 2-313 reveals a similar hesitancy on the part of courts to dispense with the question of whether an express warranty exists as a matter of law. A Florida Court, in reversing a summary judgment rendered in favor of a defendant in an express warranty action under the Florida Commercial Code, made observations which apply with equal force to the present case:

"The most prominent principle in the construction of warranties is the ascertainment of the intentions

of the parties in light of the surrounding circumstances. (Citation omitted.) At minimum, these diverse contentions create a jury question as to the facts at issue in the understanding between the parties. On the present posture of the case it cannot fairly be said that, as a matter of law, no express warranty was created, especially since the record reveals no deposition by the employee (of the seller who allegedly made the affirmation of fact upon which the allegation of express warranty was made)."

*Knipp v. Weinbaum,* 351 So. 2d 1081, 1085 (Fla. App. 1977), *cert. denied,* 357 So. 2d 188 (Fla. S. Ct. 1978). In *Woodruff v. Clark County Farm Bureau Coop. Assoc.,* 153 Ind. App. 31, 286 N.E.2d 188 (1972), the Indiana Court of Appeals reversed the trial court's grant of summary judgment upon the ground that where the facts or affirmations relied upon to prove the existence of an express warranty are entirely parol, then the trier of fact must determine whether they amount to express warranties. *Id.* at 199; *see also Young & Cooper v. Vestring,* 214 Kan. 311, 521 P.2d 281 (1974). As a general matter the existence of an express warranty is a question of fact, *see Rogers v. Crest Motors, Inc.,* 516 P.2d 445, 447 (Colo. App. 1973); *Janssen v. Hook,* 1 Ill. App. 3d 318, 272 N.E.2d 385 (1971); *Putensen v. Clay Adams, Inc.,* 12 Cal. App. 3d 1062, 91 Cal. Rptr. 319 (1970), which does not lend itself easily to resolution on a motion for summary judgment. Accordingly, we conclude, on the facts and circumstances of this case, that the question of the existence of an express warranty, and specifically the issue of whether appellee's statements exclusively referred to the past operation of the engine, is a matter which should be resolved by the trier of fact and not by the entry of summary judgment.

## Implied Warranty of Fitness for a Particular Use

Appellant contends that the allegation of implied warranty of fitness for a particular purpose, coupled with

George's deposition testimony, raises a material issue of fact which should be decided by the trier of fact. We agree. *Md. Com. Law Code Ann.* § 2-315 (1) (1975) provides as follows:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under (§ 2-316) an implied warranty that the goods shall be fit for such purpose."

George's deposition discloses that George informed appellee that he intended to use the engine in a "go-cart". The appellee responded, according to George, that the engine could be used in a "go-cart" because the "shaft was out the side of the engine" and that the engine "ran good". Appellee admits in his brief that he was apprised of the purpose for which George was purchasing the engine. The issue, then, in our review of the trial court's granting of the motion for summary judgment, is whether there is a genuine dispute as to George's reliance on the appellee's skill or judgment. *See Shay v. Joseph,* 219 Md. 273, 275, 149 A.2d 3 (1959).

Appellee, in his brief, relies upon George's statement that at the time he purchased the engine he was taking a course in auto mechanics where he had worked on small engines for the proposition that George's judgment and skill was at least as good as appellee's. We believe this evidence presents a factual dispute as to whether George relied upon himself or acutally relied upon appellee's skill and judgment to select or furnish suitable goods. Although the evidence is undisputed, the facts here are susceptible of more than one permissible inference and the choice between these inferences should be made by the trier of fact. *Washington Homes v. Interstate Land Development, supra.* Moreover, Comment 1 to § 2-315 states that the question of whether an implied warranty of fitness for a particular purpose exists in any particular case is basically a question of fact to be determined by the circumstances of the contracting. *See U.S.*

*Fibres, Inc. v. Proctor & Schwartz, Inc.,* 358 F. Supp. 449 (E.D. Mich. 1972), *aff'd* 509 F.2d 1043 (6th Cir. 1975); *Metowski v. Traid Corp.,* 28 Cal. App. 3d 332, 104 Cal. Rptr. 599 (1972). The fact that George may have had some experience with engines does not necessarily preclude the possibility that he was relying upon appellee's knowledge of the capabilities of this particular engine. We believe this raises a factual dispute which should not have been resolved on a motion for summary judgment.

We note that § 2-315 does not limit the application of an implied warranty of fitness for a particular purpose to merchants only. The official comment to that section states that, "Although normally the warranty will arise only where the seller is a merchant with the appropriate 'skill or judgment', it can arise as to nonmerchants where this is justified by the particular circumstances." *Md. Com. Law Code Ann.* § 2-315, Comment 4 (1975). The burden of proof carried by the buyer where a nonmerchant seller is involved poses greater difficulties, particularly on the issue of appellee's possession of appropriate skill and judgment, but it does not warrant the granting of a motion for summary judgment. This issue should be submitted to the trier of fact for determination as to whether appellants can overcome this obstacle.

Count Three relates to George's father's claim and, of course, is derivative of Counts One and Two. Since we have concluded the trial court erred in granting summary judgment, so far as the express warranty and implied warranty of fitness for a particular use theories of Count Two are concerned, it follows that Count Three is also viable.

> *Judgment reversed as to Counts Two and Three; case remanded for further proceedings.*
> *Costs to be paid by appellee.*