597 A.2d 516

Joanne S. BEERY

v.

MARYLAND MEDICAL LABORATORY, INC.

No. 1797, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 30, 1991.

Certiorari Denied Jan. 27, 1992.

82

Mercedes C. Samborsky, Joppa, for appellant.

Norman R. Buchsbaum (Michael D. Carlis, Michael Hendler and Adelberg, Rudow, Dorf, Hendler & Sameth, on the brief), Baltimore, for appellee.

Argued before BISHOP, BLOOM and HARRELL, JJ.

BLOOM, Judge.

Appellant, Joanne Beery, was the attorney for Mary DePaolo in an action brought by DePaolo against appellee, Maryland Medical Laboratory, Inc., in the Circuit Court for Baltimore City. At the conclusion of the case, after dismissing counts for negligent infliction of emotional distress (Count IV in the original complaint), wrongful or abusive discharge and intentional infliction of emotional distress (Counts II and III, respectively, in both the original complaint and the amended complaint), and after granting summary judgment in favor of appellee on the sole remaining count (Count I—Slander) in the amended complaint, the court granted appellee's motion for "sanctions" under Md. Rule 1–341 and awarded appellee a judgment against appellant and her client in the amount of $10,000, for counsel fees. An appeal resulted in our affirmance on the merits of the case itself, but a remand as to counsel fees to enable the trial court to determine whether the counts for abusive discharge, intentional infliction of emotional distress, and negligent infliction of emotional distress had been instituted or maintained in bad faith or without substantial justification. Upon remand, the circuit court found both bad faith and lack of substantial justification and entered judgment, against appellant only, for $12,000.00 awarded as counsel fees pursuant to Md.Rule 1–341.

In this appeal from that judgment, appellant presents us with a pentad of assertions of error:

1. The trial court's finding that appellant acted with bad faith or without substantial justification was clearly erroneous in light of its finding that appellant acted without "evil intent" and with what she believed to be "appropriate conduct."

2. The trial court abused its discretion when it sanctioned appellant based on "all of the evidence received in this matter" instead of limiting its inquiry to the proceedings related solely to the two alternative counts of appellant's amended complaint.

3. The trial court erred in ruling appellant had no substantial justification for filing and maintaining the two alternative counts of appellant's amended complaint.

4. The trial court abused its discretion when it imposed Md.Rule 1–341 sanctions against appellant solely because the appellant had "cost the defendant a substantial amount of money in counsel fees."

5. The trial court abused its discretion when it imposed Rule 1–341 sanctions against appellant for defending a motion to dismiss two alternative counts of appellant's amended complaint.

We shall address the substance of each of those contentions, but not as appellant presented them.

Our review of the record leads us to conclude that the trial court was not clearly erroneous in finding that appellant acted without substantial justification in filing and maintaining the actions for negligent infliction of emotional distress, abusive discharge, and intentional infliction of emotional distress. We need not address the issue of whether the court was clearly erroneous in finding bad faith, since the finding of lack of substantial justification will support an award of counsel fees under Rule 1–341. The court did err, however, in arriving at the amount of $12,000 as a sanction. Accordingly, we shall vacate the judgment and remand for further proceedings to determine an appropriate award of counsel fees.

## Background

A summary of the anfractuous path the litigation has taken to reach this point may place the issues in proper perspective.

Mary DePaolo was employed by Maryland Medical Laboratory, Inc., as an acting assistant supervisor. On 3 April 1987 she was called into the department head's office where, in front of other employees, based primarily on information received from a co-worker, she was accused of misconduct, including acts that could be construed as theft. She was then told that she was fired. She denied the accusations and threatened to sue the company. The company personnel manager was then called to the office, and she "suspended" the termination of employment pending further investigation. The entire incident lasted less than an hour and a half, at the end of which time Ms. DePaolo was still employed. Nevertheless, Ms. DePaolo had become emotionally upset and felt too ill to work that evening. She was told to go home and report for work the following Monday.

Ms. DePaolo never returned to work; instead, she filed a claim for worker's compensation, alleging that the emotional damage she had sustained as a result of the incident constituted an accidental injury arising out of her employment. While her compensation claim was still pending, Ms. DePaolo, through appellant, her attorney, instituted this civil action against appellee in the Circuit Court for Baltimore City.

As noted, *supra,* the original complaint consisted of four counts: I—slander; II—abusive or wrongful discharge; III—intentional infliction of emotional distress; and IV—negligent infliction of emotional distress. Appellee answered the complaint and filed a motion to dismiss Counts II, III, and IV for failure to state a cause of action. As to Count II, appellee asserted that the discharge did not violate any clear mandate of public policy; Count III was challenged on the sufficiency of the averments; and Count IV was contested on the basis that Maryland does not recognize an action for negligent infliction of emotional distress. Prior to a ruling on the motion, the Workers' Compensation Commission concluded that DePaolo had suffered a compensable injury and awarded benefits for tempo-

rary total disability. Appellee then amended its motion to add the defense of estoppel to Counts III and IV.

The trial court (Ward, J.) dismissed Count IV with prejudice and Counts II and III with leave to amend. DePaolo then filed an amended complaint containing three counts: slander (Count I), abusive discharge (Count II), and intentional infliction of emotional distress (Count III). Appellee responded with a motion to dismiss Counts II and III, which the court (Greenfeld, J.) granted, dismissing Counts II and III without leave to appeal.

Several months later, appellee filed a motion for sanctions under Rule 1–341, contending that Counts II, III, and IV had been filed in bad faith and without substantial justification. Shortly thereafter, appellee moved for summary judgment on the remaining count, slander. The court (Ward J.) granted the motion for summary judgment as to Count I, thereby making final the judgment in favor of appellee. The court also granted appellee's motion for sanctions, ordering appellant and DePaolo to pay $10,000 in attorneys' fees and related expenses on Counts II, III, and IV. Appellee's supplemental motion for sanctions seeking attorneys' fees and expenses for defending Count I was denied.

Appellant and DePaolo appealed the granting of the motion for summary judgment on Count I, the dismissal of Count II, the dismissal of Count III, and the order for sanctions in the amount of $10,000. Appellee cross-appealed on the denial of its motion for sanctions on Count I.

In an unreported decision, *DePaolo v. Maryland Medical Laboratory, Inc.* (No. 431, September Term, 1989, filed 17 November 1989), this Court affirmed the granting of the motion for summary judgment on Count I; affirmed the dismissal of Counts II and III; affirmed the trial court's refusal to grant appellant's motion to withdraw her appearance; and affirmed the trial court's denial of appellee's motion for sanctions on Count I. We remanded the assessment of expenses in the amount of $10,000, directing the trial court to review its award in light of the then recent

decision in *Talley v. Talley*, 317 Md. 428, 564 A.2d 777 (1989), which held that before a court awards attorney's fees and costs it must make an evidentiary finding of "bad faith" or "lack of substantial justification," and that "some brief exposition of the facts upon which the finding is based and an articulation of the particular finding involved" are necessary for subsequent review. *Talley*, 317 Md. at 436, 564 A.2d 777. There being nothing in the record to indicate that those required findings specified in *Talley* were made, we could neither affirm nor reverse the order of the trial court with respect to the attorneys' fees and costs.

On remand, the trial court had two issues before it: a motion by appellant that Judge Ward recuse himself, and the remand by this Court on the issue of the attorneys' fees and costs. The recusal motion was denied, but since appellant takes no issue with that ruling in this appeal, we shall not discuss it.

The trial court, in an oral decision rendered in open court on 10 August 1990, held: (1) as to Counts II (abusive discharge) and III (Intentional infliction of emotional distress), there was bad faith and lack of substantial justification; (2) as to Count IV (negligent infliction of emotional distress), there was no bad faith, but there was lack of substantial justification.

In its Memorandum Opinion and Order on 17 September 1990, the trial court affirmed its finding of bad faith and lack of substantial justification articulated orally on 10 August 1990, and assessed $12,000 in attorneys' fees and costs against appellant, Beery, only, the claim against Ms. DePaolo having been dropped.

I

The judgment against appellant for counsel fees was imposed pursuant to Md.Rule 1–341, which provides:

In any civil action, if the court finds that the conduct of any party in *maintaining* or defending any *proceeding* was in bad faith *or without substantial justification* the

court may require the offending party *or the attorney advising the conduct* or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including *reasonable attorney's fees, incurred* by the adverse party *in opposing it.* (Emphasis added.)

The questions before us then, are: whether the trial court was clearly erroneous in finding that appellant, as counsel for Mary DePaolo, *advised* the bringing and maintaining of *proceedings, i.e.,* three counts in a four-count complaint, two counts in the three-count amended complaint, without substantial justification and, if so, whether $12,000 represents a *reasonable attorney's fee* incurred by appellee in defending the unjustified proceeding.

## II

The court found that appellant, rather than her client, was responsible for the addition of the counts for abusive discharge and intentional and negligent infliction of emotional distress, which the court determined had no substantial justification in law or in fact, to the count alleging slander, the bringing and maintenance of which was found to be justified in light of Ms. DePaolo's version of the facts.

Appellant does not contest the finding that she advised the conduct found to be unjustified; that basis for the assessment of counsel fees against her, therefore, is not at issue.

## III

■ Appellant stresses the fact that the trial court made a specific finding of fact that it believed there was no evil intent on appellant's part and that she was attempting to act on behalf of her client with what she believed to be appropriate conduct. Appellant argues that, because of this finding by the court, the finding of bad faith and lack of

substantial justification was clearly erroneous. The court's comments, however, must be viewed in context.

In its 17 September 1990 Memorandum, the court stated: During the course of the hearing, Mrs. Beery complained through counsel that the granting of sanctions in this case against her might well embarrass her in her application for membership in the California bar. This Court offered Mrs. Berry time to bring to this Court's attention anything in the California regulations which would substantiate her position, and this Court received no reply after a reasonable waiting period.

Nevertheless, this Court desires to make it clear that it does not find in Mrs. Beery's conduct anything which should incapacitate her as a member in good standing or an applicant in good standing in either the California bar or any other bar. While it is true that Mrs. Beery's conduct has cost the Defendant a substantial amount of money in counsel fees, this Court believes that there was no evil intent on her part, and that she was attempting to act on behalf of her client, Mary DePaolo, with what she believed to be appropriate conduct.

Taken out of context, this statement by the court could be construed to lend credence to appellant's contention that there was no finding of bad faith. The trial court, however, specifically affirmed in that *same* memorandum its previous findings of bad faith and lack of substantial justification. In effect, the court indicated that it did not want to jeopardize appellant's opportunity to practice law in California or any other state. Nevertheless, appellant argues that these statements made by the trial court negate the essential element of intentional misconduct needed to justify imposition of Rule 1–341 counsel fees as construed by *Talley*, since the trial court "unequivocally found no intentional misconduct." We shall not endeavor to reconcile the court's comments relied upon by appellant with the seemingly contradictory finding of bad faith. As we pointed out above, the finding of a lack of substantial justification, not being clearly erroneous, will suffice to support an award of

counsel fees under Rule 1–341. The absence of bad faith is not an excuse for an otherwise unjustified proceeding, and the court clearly found a total lack of justification for Counts II, III, and IV.

## IV

██ Appellant contends that the trial court based its assessment of Rule 1–341 counsel fees on "all of the evidence received in this matter," when it should have focused at the point in time when appellee filed its motion to dismiss the alternative counts of the amended complaint. Then, appellant, argues, the trial court should have inquired as to whether appellant had substantial justification for responding to that motion to dismiss. The statement appellant refers to was made in the trial court's Memorandum Opinion and Order, which addressed the court's findings at the hearing on remand from this Court. The court stated in its Memorandum:

> The Court has, again, considered all of these factors, as it also considered them before but did not articulate them in writing, and for this reason is assessing Twelve Thousand Dollars ($12,000.00) in sanctions against JoAnne Beery only. While the Court understands that the Maryland Medical Laboratory through counsel desires to obtain substantial additional sanctions in view of the large counsel fees that it has had to expand (sic) in this matter, nevertheless, based on all the evidence received in this matter, this Court feels that the above awarded amount is reasonable under all of the circumstances.

Appellant's argument would be meaningful if the trial court had found that the suit was not *brought* without substantial justification but was only *unjustifiably continued* beyond a certain point. If that had been the trial court's finding, it would not have been appropriate for it to consider *all* of the evidence it had received in order to reach that conclusion. It was not inappropriate, in the case *sub judice*, where there was a finding of lack of substantial justification for the *original* filing. It was also appropriate

for the trial judge to consider the surrounding circumstances. As we stated in *Bohle v. Thompson*, 78 Md.App. 614, 554 A.2d 818 (1989), on this subject:

> Although a finding of bad faith does not necessarily involve an examination of the merits of the case, a finding that a cause of action was brought or maintained without substantial justification *does require such an examination.*

*Bohle*, 78 Md.App. at 639, 554 A.2d 818 (emphasis added).

Appellant cites as authority for her proposition the case of *Kelley v. Dowell*, 81 Md.App. 338, 567 A.2d 521 (1990), where we reversed the imposition of Rule 1–341 fees and costs. In that case, an order passed on an ex parte motion on 17 June 1988 granted to Kelley custody of his three sons. A merits hearing was held on 15 February 1989, and the trial court terminated the ex parte order previously issued, denied Kelley custody of two of his sons and granted him custody of the oldest son. The court also ordered Rule 1–341 costs of $20,139.33; one-half to be paid by Kelley, and the other half to be paid by his attorney. After the merits hearing, the trial judge stated:

> The court now comes to the Ex Parte Order. There was not the slightest evidence in this case that an emergency existed in June of '88 or at the time this Order was signed. What Judge Burns heard and considered is unknown to me, but what happened from the evidence in this case was clearly wrong and unjustified.... The court feels that all things that have eminated (sic) from that Ex Parte Order were uncalled for, unsupported by the evidence and done wrong.

*Kelley*, 81 Md.App. at 343, 567 A.2d 521. We reversed the imposition of costs and fees and held that the trial court was required to take evidence on the circumstances surrounding Judge Burns's grant of the *ex parte* motion, and to determine whether that motion was substantially justified at the time it was filed. We held that the trial judge should have limited his inquiry to the point in time when Kelly filed the motion for ex parte relief. Instead, he

determined the lack of substantial justification for filing the action in light of all of the evidence adduced at the trial on the merits.

In *Kelley,* the issue involved was whether Kelley filed the *ex parte* motion without substantial justification, and not whether his *cause of action* for modification of child custody and support lacked substantial justification. In the case *sub judice,* the trial judge expressly found both bad faith and lack of substantial justification in bringing *and* maintaining Counts II, III, and IV.

Because the court was addressing the issue of whether there was substantial justification for bringing the actions set forth in the second, third, and fourth counts, and not merely whether there was substantial justification for resisting the motions to dismiss them, we hold that the court did not err or abuse its discretion in declining to limit its inquiry to the proceedings related solely to the two alternative counts of appellant's amended complaint when it imposed Rule 1–341 fees and costs against her.

## V

Appellant contends that the trial court erred in ruling that she had no substantial justification for filing and maintaining the two alternative counts (Counts II and III) of her amended complaint. She supports her argument by stating that the trial judge was "dismayed" that she filed the alternative count of intentional infliction of emotional distress because he disapproves of that tort. She also argues that the Workers' Compensation Commission had bifurcated the accidental and intentional aspects of the claim, and if, on appeal, no accidental injury had been found, DePaolo would have been remediless.

The record amply supports the trial court's finding that there was no substantial justification for bringing an action for negligent infliction of emotional distress, wrongful discharge, or intentional infliction of emotional distress, and certainly no justification for maintaining the latter two

beyond the dismissal of the second and third counts of the original complaint.

### A.

With respect to Count II—abusive discharge—we reiterate what we pointed out in our unreported opinion in *DePaolo v. Maryland Medical Laboratory, Inc., supra.* Ms. DePaolo was not actually discharged, either on 3 April 1987 or at any other time. She conceded that once she protested the decision to terminate her employment, the termination was withdrawn.

In this appeal, appellant makes a novel and interesting argument that, even though Ms. DePaolo was almost immediately rehired, she had actually been fired, and that the emotional upset and illness she sustained resulted from that discharge, brief though it was. On that basis, she contends, there was substantial justification to bring and to attempt to maintain the cause of action for abusive discharge. What appellant overlooks, however, is the fact that mere termination of employment does not give rise to a cause of action for abusive discharge. Since Ms. DePaolo was an "at-will" employee, appellee had an absolute right to fire her for *no* reason or for *almost any* reason without incurring any liability for doing so. In recognizing the new tort of abusive discharge as an exception to the common law rule that at-will employment may be terminated at the pleasure of either party at any time for any or no reason, the Court of Appeals made it perfectly clear that the exception applies only when the discharge, *i.e.*, the reason for it, contravenes some clear mandate of public policy. *Adler v. Standard American Corp.*, 291 Md. 31, 432 A.2d 464 (1981). Ms. DePaolo claimed that she was fired because she had been wrongfully accused of conduct that violated company policy and constituted the crime of theft. Had she been guilty of the alleged misconduct, it would have been entirely proper and appropriate for the employer to fire her. Firing her on the basis of a fellow employee's unsubstanti-

ated allegations, without proof and, indeed, without fully investigating the matter, may very well have been improper—even foolish—but can hardly be said to contravene any clear mandate of public policy.

The following colloquy between appellant and Judge Greenfeld, at the hearing on appellee's motion to dismiss the second and third counts of DePaolo's amended complaint, demonstrates the lack of justification for the abusive discharge claim:

MS. BEERY: ... It is our contention that there is public policy violated.

THE COURT: What is that?

MS. BEERY: There is—there was a wrongful discharge on the basis of theft without any investigation. So there was a violation.

THE COURT: On the basis of theft. Who was the thief?

MS. BEERY: My client, Your Honor.

THE COURT: They thought your client was the thief?

MS. BEERY: That's right.

THE COURT: What's wrong with that?

MS. BEERY: Your Honor, she was accused and tried without any jury.

THE COURT: I understand that. Where does that give you a cause of action for something other than slander? Where is your cause of action for something other than slander or malicious prosecution?

MS. BEERY: The discharge is wrongful if there's a violation of public policy.

THE COURT: What is the public policy?

MS. BEERY: Your Honor, I just told you, to be deprived of due process requirements in the courts.

THE COURT: What does that have to do with due process requirements? Due process requirements attend a civil termination, a termination of civil employment by a private employer?

MS. BEERY: Your Honor, she was tried and convicted by her employer without due process.

THE COURT: He didn't send her to jail.

MS. BEERY: No, but they deprived her of her job.

THE COURT: That's right, an "at will" employee. So what?

THE COURT: There was no constitutional right involved in *Adler.* The theory of *Adler* is that someone cannot be discharged from "at will" employment if that person is going to be forced to do something that violates public policy. I don't know how you fit into these set of facts. The set of facts have nothing to do with that.

Judge Greenfeld, of course, was absolutely correct; there was no public policy violation. We need not comment any further on this issue; the record speaks for itself.

### B.

■ As to Count III, intentional infliction of emotional distress, the Court of Appeals has identified four elements that a plaintiff must prove:

1. The conduct must be intentional or reckless;
2. The conduct must be extreme and outrageous;
3. There must be a causal connection between the wrongful conduct and the emotional distress;
4. The emotional distress must be severe.

*Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977), *quoted in Moniodis v. Cook,* 64 Md.App. 1, 494 A.2d 212 (1985).[1]

With respect to the second element, the Court in *Harris* referred to comment d of Section 46 of the Restatement (Second) of Torts (1965), which states:

Liability is found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

---

1. *See also Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 502 A.2d 1057 (1986), *cert. denied.,* 306 Md. 118, 507 A.2d 631 (1986).

It is simply preposterous to suggest that the conduct of appellee—telling an at-will employee that she was being fired for misconduct, based upon information received from another employee, and then rescinding the discharge pending further investigation—constituted "extreme and outrageous" conduct that went "beyond all possible bounds of decency" and was so "atrocious" as to be "utterly intolerable in a civilized community."

With respect to the element of severity of distress, the Court of Appeals stated in *Harris:*

Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the prices of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

*Harris,* 281 Md. at 571, 380 A.2d 611, quoting Restatement (Second) of Torts, ch. 2, Emotional Distress, 46 (1965).

As Judge Ward quite properly pointed out, the facts of this case did not even approach the requisite degree of severity.

## C.

■ Appellant filed a claim for negligent infliction of emotional distress despite the fact that Maryland does not recognize that tort. *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 502 A.2d 1057, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986). Appellant explained that the fourth count was just "ponytailed on the rest" to cover all possible avenues of the law on infliction of emotional distress. On the basis of that explanation, the court found no "bad faith." Nevertheless, since appellant advanced no new legal theory upon which the trial court could possibly recognize such an action, the court did not err in finding a lack of substantial justification for asserting this claim.

■■■■■■■■■■■■■■■

At one point during the hearing, the court stated that it did not find bad faith or lack of substantial justification with respect to Count IV. That statement was clearly a slip of the tongue. Within moments thereafter the court announced its findings of lack of substantial justification but no bad faith as to Count IV; bad faith and lack of substantial justification as to Counts II and III. Those findings were confirmed in the court's oral decision and later written judgment.

### D.

■■■ In support of her argument that there was some justification for bringing the actions set forth in the second and third counts, appellant points to the fact that the trial court gave her leave to amend those counts. We see nothing inconsistent in giving appellant an opportunity to amend and later finding, when the amended complaint did nothing more than recite "the same old thing with a few extra words and adjectives," that there never was any basis in law or fact for asserting the claims in the first place.

### VI

Having concluded that the court did not err in finding that appellant was amenable to "sanctions" under Md.Rule 1–341 for bringing and maintaining actions without substantial justification, we turn now to the matter of the amount of counsel fee awarded and the basis for the award.

■■■ When we remanded *DePaolo v. Maryland Medical Laboratory, Inc.* to the circuit court, we did so in order to permit the court to reconsider the award of counsel fees. We noted that, on the record, some award under Rule 1–341 might be justified, but declined to suggest that an award was in any way required or, if some award was appropriate, whether $10,000.00 was justified. We remanded for a review of the matter in light of *Talley v. Talley, supra* (which requires a finding of bad faith or lack of substantial justification), and stated that if it still desired to make an award

under the rule the court should articulate the findings necessary to support such an award.

The court's articulation of findings to justify the $12,-000.00 award upon remand consisted only of findings that appellant acted in bad faith and without substantial justification, and was financially able to pay an award of $12,-000.00. Implicit in the award, of course, was a finding that $12,000.00 was not an excessive or unreasonable fee. Appellee's counsel had submitted, as part of the motion for sanctions under Rule 1–341, a statement showing that their total fee for legal services rendered in connection with the proceedings was in excess of $36,000.00. Apportioning that total primarily by assigning one-fourth thereof to the count for slander—which the court found was not maintained in bad faith or without substantial justification—and one-fourth to each of the other three counts, appellee initially sought an award of $30,696.81. During oral argument at the hearing on remand, the court referred to the sum of $50,000.00, but we find nothing in the record extract to support that figure.

Once the court determined, as per *Talley v. Talley, supra,* and our unpublished opinion in *DePaolo* remanding the case, that an award of attorney's fees pursuant to Rule 1–341 was appropriate, the hearing centered on appellant's financial status. The parties as well as the court clearly believed that her ability to pay was the only standard to be applied in fixing the amount of the award. In fairness to the hearing judge and counsel, that belief had a reasonable basis. At the time of the hearing, August 1990, the only reported appellate decision concerning the amount of an award under Rule 1–341 was *Needle v. White,* 81 Md.App. 463, 568 A.2d 856 (1990), in which this Court, purely by way of *dicta,* suggested, "[f]or the court's guidance in future Rule 1–341 cases":

It might well be an abuse of discretion to impose a substantial monetary sanction on a litigant without deter-

mining the financial ability of the litigant to pay the amount assessed.

81 Md.App. at 480, 568 A.2d 856.

In two recent cases, this Court, by way of clarifying the rule, has set forth additional standards or criteria for, or limitations on, an award of counsel fees pursuant to Rule 1–341.

In *U.S. Health v. State*, 87 Md.App. 116, 589 A.2d 485 (1991), *cert. denied*, 324 Md. 69, 595 A.2d 482 (1991), we held that Md. Rule 1–341 is not a punitive measure; its intent, as manifested by its language, is to compensate a party for expenses incurred in opposing another party's conduct in maintaining or defending a proceeding in bad faith or without substantial justification. We pointed out that, unlike Federal Civil Procedure Rule 11, its federal counterpart, Md.Rule 1–341 does not refer to "sanctions," a word that in some contexts connotes penalties. It may well be that our indiscriminate use of that word, with its punitive connotation, in referring to an award under the rule, helped create the erroneous impression that Rule 1–341 may be used to penalize reprehensible or unjustified conduct.

In *Optic Graphics v. Agee*, 87 Md.App. 770, 591 A.2d 578 (1991), the circuit court, after entering judgment for the defendants on both counts of a complaint alleging breach of an employment contract and violation of Maryland's Uniform Trade Secret Act, Md.Com.Law Code Ann., §§ 11–1201 *et seq.*, awarded the successful parties counsel fees pursuant to Rule 1–341. We held that the trial court was clearly erroneous if it found that the plaintiff had acted in bad faith in initiating suit on the trade secrets theory and that the court abused its discretion if it imposed sanctions (awarded counsel fees) on that basis. Since we could not determine whether the trial court determined that the contract claim had been brought in bad faith or was merely continued in bad faith after certain facts were clearly established during discovery proceedings, we reversed the award of counsel fees for the violation of trade secrets claim and remanded for the court to determine when bad faith began on the

contract claim. Of particular significance to this case, we said:

> If counsel can separate the fees and expenses generated by the defense of the trade secrets claim from those generated by the defense of the breach of contract claim, then we think that the trial court appropriately may impose sanctions for bad faith with respect to the breach of contract claim.

*Optic Graphics*, 87 Md.App. at 795, 591 A.2d 578.

It is perfectly obvious from the record in this case that the $12,000.00 awarded appellee had no relationship to the amount of expenses actually incurred in defending the second, third, and fourth counts. That the court made no findings with respect to that requirement is understandable. Appellee's counsel did not attempt to present any evidence that would have enabled the court to make such findings, and there was at that time no case law indicating any reason or necessity to do so. What appellee's counsel did to apportion the total bill for legal fees, arbitrarily assigning about one-fourth to each count, simply will not suffice. Hardly any time would have been required to demonstrate that there was no justification for Count IV in view of *Hamilton v. Ford Motor Credit Co.* Nowhere near as much time would have been required to demonstrate the lack of substantial justification for either the second or the third count as would have been required to defend the slander count. Indeed, the record indicates that appellee's counsel's principal complaint about appellant and her client related to discovery proceedings, most of which were concerned with the slander action. As in *Optic Graphics*, we must vacate the judgment for attorney's fees and remand for a determination of what part of appellee's claimed expenses and attorney's fees are specifically attributable to the unjustified maintenance of meritless claims, provided counsel can establish what portions of their fees are specifically attributable to that conduct.

In reaching that determination, the court must be guided by the principle that an award of counsel fees pursuant to Rule 1–341, despite our occasional use of the word "sanction," is not punitive but is intended merely to compensate the aggrieved party for their reasonable costs and expenses, including reasonable attorney's fees, actually incurred in opposing the unjustified or bad faith conduct. As in any other judicial proceeding, the party seeking relief has the burden of establishing his entitlement to that relief. A party seeking "sanctions" under Rule 1–341, *i.e.*, reimbursement of reasonable expenses including reasonable attorney's fees, incurred in opposing an unjustified or bad faith claim or defense, must not only establish the bad faith or lack of justification but also the expenses actually incurred as a result thereof. The latter burden may present no major difficulty in a case in which all claims were unjustified. Where only part of a proceeding was maintained in bad faith or without substantial justification, however, the aggrieved party may have a great deal of difficulty in separating expenses incurred in opposing one part of his opponent's claim or defense from the remaining part or parts.

From a practical standpoint, the major item of expense incurred in opposing an unjustified claim or defense will almost always be the attorney's fee, and in most cases these days that fee will be based upon "billable hours" expenses by the attorney. An attorney who intends to claim compensation under Rule 1–341 for defending a multiple-count claim in which at least one count has colorable merit may have to keep records that accurately reflect what time is expended on specific aspects of the case, in order to meet the burden of proof on that issue. A *post facto* arbitrary apportionment of generalized time records will not suffice.

On the other hand, plaintiffs' attorneys should heed Abraham Lincoln's sound advice: "In law it is good policy to never plead what you need not, lest you oblige yourself to

prove what you can not." [2]  Failure to do so may very well result in being assessed attorney's fees for requiring opposing counsel to defend a "kitchen sink" type of pleading containing multiple claims strung together without any critical thought given to the applicability or merits of each claim—provided, of course, opposing counsel maintains adequate records to justify such an assessment.

JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–HALF BY APPELLEE.

---

2.  Letter to Usher F. Linder, February 28, 1848.